UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANDY LIEN and ERIN SMITH,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　Defendants. | Case No. 21-cv-224-MMA (WVG)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE**<br><br>[Doc. No. 3] |

　　　　Plaintiffs Mandy Lien ("Lien") and Erin Smith ("Smith") (collectively, "Plaintiffs") bring this civil rights action under 42 U.S.C. § 1983 against Defendants City of San Diego ("City"), David Nisleit ("Nisleit"), Todd Gloria ("Gloria"), and unidentified Does (collectively, "Defendants"). *See* Doc. No. 1 ("Compl."). Defendants move to dismiss each cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) and move to strike several allegations from the Complaint pursuant to Federal Rule of Civil Procedure 12(f). *See* Doc. No. 3. Plaintiffs filed an opposition to Defendants' motion, and Defendants replied. *See* Doc. Nos. 4, 5. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 6. For the reasons set forth

1

below, the Court **GRANTS** Defendants' motion to dismiss and **GRANTS in part and DENIES in part** Defendants' motion to strike.

# I. B<span>ACKGROUND</span>[1]

Plaintiffs' action arises from a demonstration involving supporters and opponents of former President Donald Trump ("Trump") that took place in Pacific Beach on January 9, 2021. *See* Compl. ¶¶ 1, 2, 21.

Lien arrived in Pacific Beach at 1:05 P.M. on January 9 "to peacefully protest a white nationalist rally led by hate groups from East County." *Id.* ¶ 21. She was wearing a shirt that said "don't pretend your patriotism isn't racism" and a red hat that supports Black Lives Matter. Smith walked to the area "to peacefully counter protest a rally bringing neo-nazis from out of town." *Id.* ¶ 29. Lien and her friends walked and chanted, hoping to "discourage those that mean to spread hate." *Id.* ¶ 23. A few unidentified individuals showed up "to instigate and agitate." *Id.* Lien and her friends then walked to the intersection of Mission Boulevard and Hornblend Street. *Id.* At the intersection, Lien saw "a line of officers and the group of white nationalists behind them." *Id.* There were twenty-five officers dressed in riot gear facing Lien and her group; there were less than ten officers facing the "the white nationalist group that is known for carrying weapons." *Id.* ¶ 24. People from the white nationalist group were "instigating and pepper spraying people." *Id.* ¶ 25.

At some point, San Diego Police Department ("SDPD") officers declared an "unlawful assembly" against anti-Trump protestors. *See id.* ¶¶ 4, 39, 43. "When it was apparent the police were only interested in using excessive force against the counter protestors, Lien and her mom friends decided it was in their best interest to leave to avoid

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

injury." *Id.* ¶ 26. As they were leaving, police moved forward and began to pepper ball the crowd. *Id.* SDPD officers yelled "Move! Move! Move!" *Id.* ¶ 29.

Smith tripped after an officer shoved her with a baton. *Id.* ¶¶ 26, 30. Police then hit Smith with batons and yelled at her while she was on the ground. *Id.* ¶¶ 26, 29, 31. While being hit by male officers, Smith screamed "I just tripped! I just tripped!" *Id.* ¶ 32. While Lien tried to help Smith stand up, officers surrounded Smith to hide what was happening, and a female officer hit Lien and told her to stay back. *Id.* ¶¶ 26, 33. After Smith stood up, police shot her with a pepper ball in the back of her arm, which caused a large welt. *Id.* ¶ 34. Smith and Lien then moved to a safe place while being verbally threatened by unidentified pro-Trump supporters. *Id.* ¶¶ 27, 36.

On the other hand, pro-Trump demonstrators were treated differently. *See id.* ¶¶ 3–4. For example, SDPD officers "high-fived and chatted it up with the violent pro-Trump side, including some who were later arrested by the FBI for being part of the assault on the U.S. Capitol." *Id.* ¶ 3. The SDPD declared an "unlawful assembly" against the anti-Trump demonstrators while allowing pro-Trump demonstrators to continue in the same area and towards the Pacific Beach boardwalk. *Id.* ¶ 4.

Plaintiffs claim that the SDPD engaged in viewpoint discrimination by declaring an unlawful assembly only against the anti-Trump protestors, which violated Plaintiffs' First Amendment rights. *See id.* ¶¶ 3, 12, 24, 26, 29, 39. Plaintiffs further allege that SDPD's actions amounted to an unlawful seizure under the Fourth Amendment and a violation of their due process rights under the Fourteenth Amendment. *See id.* ¶¶ 26, 30–34, 39, 44.

Based on these allegations, Plaintiffs bring two causes of action: (1) municipal liability against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978), and 42 U.S.C. § 1983 and (2) individual liability against Nisleit, Gloria, and Doe Defendants pursuant to 42 U.S.C. § 1983. *See id.* ¶¶ 37–44. Defendants move to dismiss the causes of action for failure to state a claim under Rule 12(b)(6) and move to strike allegations from the Complaint under Rule 12(f). *See* Doc. No. 3.

## II. Motion to Dismiss

**A. Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908; *see also Lee v. City of Los Angeles*, 250 F.3d

668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

**B. Discussion**

Defendants challenge each of Plaintiffs' two causes of action. *See* Doc. No. 3. The Court assesses each of Plaintiffs' claims in turn.

**1. Municipal Liability Under § 1983 – First Cause of Action**

Defendants argue that Plaintiffs do not sufficiently allege a specific municipal policy. *See* Doc. No 3-1 at 10.[2] Defendants challenge Plaintiffs' reliance on alleged similar occurrences at a May 2016 Trump rally and a Women's March to support a municipal policy. *See id.* at 10–11 (citing Compl. ¶¶ 7, 9); *see also* Doc. No. 5 at 2–3.[3]

---

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

[3] Defendants request that the Court take judicial notice of several orders from consolidated actions in this district: *Ramirez v. Zimmerman*, No. 17-cv-1230-BAS (AHG) (S.D. Cal.) and *Pease v. Gore*, No. 18-cv-1062-BAS (AHG) (S.D. Cal.). *See* Doc. No. 3-2. Plaintiffs do not appear to object to Defendants' request. *See* Doc. No. 4 at 2. Accordingly, because these documents are court orders and Plaintiffs do not object, the Court **GRANTS** Defendants' request for judicial notice to the extent the Court relies upon the documents. *See* Fed. R. Evid. 201; *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts."); *see also M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (citing 29 Am. Jur. 2d Evidence § 58 (1967)) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it. But a court can properly notice a doctrine or rule of law from such prior case and apply that principle under the theory of stare decisis.").

Defendants further contend that Plaintiffs fail to allege any facts that Chief Nisleit or Mayor Gloria possessed final policy-making authority for the alleged decisions. *See* Doc. No 3-1 at 12. Relatedly, Defendants assert that Plaintiffs fail to allege a specific policy that Chief Nisleit or Mayor Gloria "directed, approved or ratified." Doc. No 3-1 at 12; *see also* Doc. No. 5 at 3. Plaintiffs respond that they base their First Amendment theory on "Defendants *unlawfully* declar[ing] the assembly to be unlawful, and then engag[ing] in viewpoint discrimination by enforcing the order only against the anti-Trump side." *See* Doc. No. 4 at 4. Plaintiffs add that their Complaint shows a violation of the Fourth Amendment through SDPD's use of physical force. *See id.* As to their Fourteenth Amendment theory, Plaintiffs argue Defendants deprived Plaintiffs of their "right to remain in a place of one's choosing." *Id.*

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. *Monell*, 436 U.S. at 691, 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and[] (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)

(brackets omitted) (quoting *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

As to the second element—the policy—municipal liability under § 1983 may be premised on several grounds: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

District courts have found that *Monell* allegations are sufficient for Rule 12(b)(6) purposes where the allegations "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency was obvious and that the constitutional injury was likely to occur." *Soler v. County of San Diego*, No. 14-cv-2470-MMA (RBB), 2015 WL 13828659, at *4 (S.D. Cal. Mar. 19, 2015) (quoting *Lucas v. City of Visalia*, No. 1:09-cv-1015 AWI DLB, 2010 WL 1444667, at *4 (E.D. Cal. Apr. 12, 2010)).

Defendants' motion focuses on the policy element of Plaintiffs' *Monell* claim. *See* Doc. No. 3-1 at 9–12; *see also* Doc. No. 5 at 2–3. Thus, the Court narrows its analysis to this element.

Plaintiffs appear to allege that the City enforces a policy of anti-Trump viewpoint discrimination, which was created through "a deeply engrained pattern and practice" as well as through the direction, approval, or ratification by top policymaking officials Chief Nisleit and Mayor Gloria. Compl. ¶ 40; *see id.* ¶¶ 38–41.

As to the alleged pattern and practice, Plaintiffs' allegations are currently insufficiently pleaded to support a *Monell* claim. To base *Monell* liability on a longstanding practice or custom, the custom must be "persistent and widespread" to the extent it "constitutes a 'permanent and well settled city policy.'" *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at 691). "[I]solated or sporadic incidents" are insufficient to form the basis for a custom. *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Trevino*, 99 F.3d at 918). Rather, the custom must rest upon "practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)). To support a "a deeply engrained pattern and practice," Compl. ¶ 40, Plaintiffs point to two prior demonstrations. First, Plaintiffs allege that SDPD declared an unlawful assembly at the intersection of 5th Street and L Street near the San Diego Convention Center on May 27, 2016. *See id.* ¶¶ 7, 40. As with the case here, Plaintiffs allege that SDPD dispersed mostly anti-Trump demonstrators. *See id.* ¶ 7. As to the second demonstration, Plaintiffs claim that "SDPD allowed a violent pro-Trump mob to storm the event stage for a Women's March." *Id.* ¶ 9. Rather than dispersing the pro-Trump demonstrators, Plaintiffs aver that SDPD dispersed the Women's March participants "while the pro-Trump mob took over the area the Women's March had been permitted for." *Id.* Plaintiffs do not provide a date of the Women's March.

The line between "isolated or sporadic incidents" and "persistent and widespread conduct" is not clear. *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1209 (E.D. Cal. 2019) (citing *Gonzalez v. County of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017)); *J.M. by & Through Rodriguez v. County of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018). "Perhaps the most that can be said is that one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality." *Estate of Mendez*,

390 F. Supp. 3d at 1209 (quoting *J.M.*, 2018 WL 5879725, at *5). As currently pleaded, Plaintiffs' proffered two prior incidents are insufficient to state a plausible longstanding custom. *Compare Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (holding that two prior unconstitutional assaults within three months were not enough to establish a policy or custom), *with Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005) (reversing a district court's grant of summary judgment in favor of a city where it may be inferred that there was a policy of viewpoint discrimination against anti-WTO demonstrators given five incidents of speech suppression on the same day). Additionally, Plaintiffs do not provide a date of the Women's March incident, which prevents the Court from determining whether Plaintiffs plead a plausible and persistent pattern of prior, similar constitutional violations. Overall, Plaintiffs lack sufficient allegations to show how the City maintains a persistent and widespread policy of engaging in viewpoint discrimination against anti-Trump demonstrators.

As to the alleged direction, approval, or ratification by Nisleit and Gloria, the Court finds Plaintiffs rely upon mere conclusive or implausible averments. Plaintiffs fail to allege facts showing how Nisleit or Gloria directed, approved, or ratified the decision to engage in the First Amendment violation. In their Complaint, Plaintiffs claim that Gloria admitted to the San Diego Union Tribune on January 11 that he ratified the SDPD's actions by stating "[t]here will be consequences for those who bring that kind of behavior to our city." Compl. ¶ 6. However, Plaintiffs also note that he did not "address[] the viewpoint discrimination issue." *Id.* Plaintiffs attempt to allege ratification when pairing Gloria's statement to the newspaper with the consequences directed only to the anti-Trump protestors. As currently pleaded, the Court finds the inference of ratification is implausible to support an actionable policy. Regardless of whether the statement was too general to constitute a ratification, there is a causation issue. The at-issue policy must be the "moving force behind the constitutional violation." *Dougherty*, 654 F.3d at 900 (quoting *Plumeau*, 130 F.3d at 438). Because Plaintiffs allege that the ratification occurred on January 11 and after the events of January 9, the alleged

ratification could not have been the moving force behind the January 9 constitutional violations. Aside from Plaintiffs' unsuccessful reliance on Gloria's statement to the newspaper, Plaintiffs provide mere conclusive statements that Nisleit and Gloria directed, approved, or ratified a policy of viewpoint discrimination against anti-Trump protestors.

Additionally, Plaintiffs fail to sufficiently plead a *Monell* claim premised on the alleged Fourth or Fourteenth Amendment violations. Plaintiffs fail to allege facts supporting any pattern and practice regarding the Fourth and Fourteenth Amendment violations. Further, Plaintiffs fail to provide facts showing how Nisleit or Gloria directed, approved, or ratified a policy pertaining to the Fourth or Fourteenth Amendment violations.

In sum, the Court finds that Plaintiffs have not sufficiently alleged a plausible policy to sustain their *Monell* claim. Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** the § 1983 municipal liability claim with leave to amend.

**2. Individual Liability Under § 1983 – Second Cause of Action**

Defendants argue that the claim against the Doe Defendants should be dismissed. *See* Doc. No. 3-1 at 12. Defendants assert that Doe Defendants are "disfavored." Defendants also contend that the allegations are unclear whether SDPD officers hit Plaintiffs or whether Plaintiffs would be able to identify these officers. *See id.* at 12–13; *see also* Doc. No. 5 at 4. As to Nisleit and Gloria, Defendants argue that Plaintiffs do not plead facts to allege a conspiracy to violate Plaintiffs' constitutional rights. *See id.* at 13; *see also* Doc. No. 5 at 3–4. Plaintiffs respond that they allege supervisory liability against Nisleit and Gloria. *See* Doc. No. 4 at 9. Plaintiffs criticize Defendants' attempt to make Plaintiffs prove their allegations at the pleadings stage. *Id.* at 7. Plaintiffs further argue that they allege Nisleit and Gloria conspired to use unlawful assembly statutes as a pretext to disperse anti-Trump demonstrators. *See id.* As to the Doe Defendants, Plaintiffs contend that it would be easy to identify the SDPD officers because they have bodycams that they are required to activate when an unlawful assembly is declared. *See id.*

"To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

### i. Allegations Against Nisleit and Gloria

Plaintiffs lack "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 1216. Instead, Plaintiffs merely allege that Nisleit is the Chief of Police and "the top policymaking official for SDPD," Gloria is the Mayor and "the top policymaking official for the [City]," and Nisleit and Gloria "conspired in their individual capacities to violate and did violate and/or ratify the violation of the First, Fourth, and Fourteenth Amendment rights of Plaintiffs by falsely declaring an 'unlawful assembly' to exist only on the anti-Trump" side of the demonstration. Compl. ¶¶ 18, 19, 43. Plaintiffs provide no facts showing Nisleit's or Gloria's personal involvement in or connection to the alleged First, Fourth, or Fourteenth Amendment violations.[4] Additionally, as to Plaintiffs' conclusory conspiracy allegations, they do not allege an agreement to deprive the anti-Trump demonstrators of their constitutional rights. *See Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1179 (S.D. Cal. 2010) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)) ("In order

---

[4] As noted with the *Monell* claim, the after-the-fact statement by Mayor Gloria in the newspaper article does not establish the requisite causal connection or show his personal involvement with the events of, or in leading up to, January 9. *See supra* Section II.B.1; *see also Starr*, 652 F.3d at 1207–08 (detailing ways to allege the causal connection).

11

21-cv-224-MMA (WVG)

to allege a conspiracy under § 1983, a plaintiff must show 'an agreement or "meeting of the minds" to violate constitutional rights.'").

To overcome Defendants' motion to dismiss, Plaintiffs' must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, Plaintiffs rest upon conclusory allegations and do not provide sufficient factual support to sustain a plausible claim. Thus, Plaintiffs do not state a § 1983 claim for individual liability against Nisleit or Gloria. Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** the § 1983 individual liability claim with leave to amend.

### ii. Allegations Against Doe Defendants

In certain circumstances, when an alleged defendant's identity is unknown prior to the plaintiff filing the complaint, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (holding that the plaintiff alleged sufficient facts to support a claim of deliberate indifference to medical needs and thus the district court erred in dismissing the complaint against the doe defendant).

Dismissal of Plaintiffs' claims against the Doe Defendants is premature at this point. The Court declines to dismiss the § 1983 claim against the Doe Defendants simply because Plaintiffs were not aware of their identities at the time they filed the Complaint. *See Wakefield*, 177 F.3d at 1163. Indeed, dismissal would only be warranted if (1) discovery would not uncover their identities or (2) dismissal is warranted on other grounds. *See id.* (quoting *Gillespie*, 629 F.2d at 642); *see also Palacios v. County of San Diego*, No. 20-cv-450-MMA (DEB), 2020 WL 4201686, at *4 (S.D. Cal. July 22, 2020).

Here, the Court finds that discovery could uncover the Doe Defendants' identities from among the SDPD officers who were stationed at the demonstration on January 9. Defendants argue that the "the allegations are vague as to whether it was SDPD officers

who allegedly hit plaintiff Smith with batons and a pepperball. . . . In fact, the Doe allegation does not even say that the Doe defendants are SDPD officers." Doc. No. 3-1 at 12–13. The Court finds Defendants' argument unavailing. Assuming the truth of Plaintiffs' well-pleaded allegations and construing them in their favor, *Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340), the Court finds that is plausible that the Doe Defendants are SDPD officers. Plaintiffs refer to SDPD officers throughout their Complaint; allege they declared the unlawful assembly against the anti-Trump protestors; and claim that they "spray[ed] peaceful protesters with pepper spray, [shot] them with pepperballs, and beat[] them with batons." *See* Compl. ¶¶ 3–4; *see also id.* ¶¶ 6, 25, 29, 32, 35.

The Court now turns to whether dismissal is warranted "on other grounds"—such as whether Plaintiffs state a § 1983 claim upon which relief can be granted. *See Wakefield*, 177 F.3d at 1163. In their motion, Defendants do not argue that the § 1983 claim against Doe Defendants is deficient under the Rule 12(b)(6) standard or, similarly, address how Plaintiffs fail to allege a constitutional violation under the First, Fourth, or Fourteenth Amendments. *See* Doc. No. 3-1 at 12–13. Defendants raise this argument for the first time in their reply brief. *See* Doc. No. 5 at 4–5. The Court declines to consider this argument raised for the first time in the reply brief. *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) ("[W]e ordinarily decline to consider arguments raised for the first time in a reply brief."); *Munoz v. InGenesis STGI Partners, LLC*, 182 F. Supp. 3d 1097, 1112 (S.D. Cal. 2016) (declining to consider arguments raised for first time in a reply brief); *see also Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) (noting that consideration of an argument first raised in a reply brief is discretionary). Thus, at this juncture, the Court declines to determine whether Plaintiffs state a viable claim against Doe Defendants.

In sum, the Court finds that discovery could uncover the Doe Defendants' identities, and the Court declines to determine whether Plaintiffs state a viable § 1983

claim against the Doe Defendants. Accordingly, the Court declines to dismiss the Doe Defendants at this time.

**C. Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

### III. MOTION TO STRIKE

**A. Legal Standard**

A Rule 12(f) motion to strike allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). For the purposes of this rule, "'[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 1527 (quoting 5 Charles A. Wright & Arthur R. Miller, at 711); *see also Whittlestone, Inc.*, 618 F.3d at 974. "In order to show that a defense is insufficient, 'the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *Diaz v. Alternative Recovery Mgmt.*, No. 12-cv-1742-MMA (BGS), 2013 WL 1942198, at *1 (S.D. Cal. May 8, 2013) (quoting *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995)).

The purpose of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally disfavored, unless 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Haghayeghi v. Guess?,*

*Inc.*, No. 14-cv-00020 JAH-NLS, 2015 WL 1345302, at *5 (S.D. Cal. Mar. 24, 2015) (quoting *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)); *see also Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)). In ruling on a motion to strike, the court may only consider the face of the pleading or matters subject to judicial notice. *See Fantasy, Inc.*, 984 F.2d at 1528; *Sands*, 902 F. Supp. at 1165. "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Snap! Mobile, Inc. v. Croghan*, No. 18-cv-04686-LHK, 2019 WL 884177, at *3 (N.D. Cal. Feb. 22, 2019) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). Ultimately, the decision about whether to strike allegations is a matter within the district court's discretion. *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citing *Fantasy, Inc.*, 984 F.2d at 1528); *see also Whittlestone, Inc.*, 618 F.3d at 974 (quoting *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)).

**B. Discussion**

Defendants seek to strike the following five allegations from Plaintiffs' Complaint:

- Allegation 1: "The [SDPD], whose ranks and command structure are infested with racist, secessionist supporters of Donald Trump . . . ." Compl. ¶ 3.

- Allegation 2: "SDPD has a history of this kind of racial and viewpoint discrimination when it comes to Donald Trump rall[i]es. Following a May 27, 2016 Donald Trump speech at the Convention Center, at which Trump riled up his supporters, threatened a sitting Southern District federal judge, and then left town, SDPD declared an 'unlawful assembly' to exist at the intersection of 5th & L Street downtown, across from the Convention Center. But then SDPD dispersed *only* those to the east of the intersection, which was the largely brown and black anti-Trump side, while leaving the almost entirely white side on the west side of the intersection free to chant and jeer as the anti-Trump side was being dispersed. SDPD then pushed the anti-Trump side for *a mile* along Harbor Drive, sealing off all avenues of ingress and egress, forcing the

peaceful demonstrators all the way to Barrio Logan and sealing off the base of the overpass to prevent them from even returning to their cars." *Id.* ¶ 7.

- Allegation 3: "The City improperly withheld bodycam videos in that case for two years, which detailed the viewpoint discrimination and disparate treatment of demonstrators on opposite sides of the same intersection. The Court ruled that plaintiffs in that case had waited too long to bring viewpoint discrimination claims, allowing the City to benefit from its violation of discovery rules." *Id.* ¶ 8.

- Allegation 4: "The City . . . has learned that it can not only get away with such criminal behavior, but that it can even loudly proclaim its intentions in the media and assume no one will hold it to account." *Id.* ¶ 10.

- Allegation 5: "The purpose of the unlaw assembly statutes, Penal Code §§ 407–409, are to allow police in emergencies to treat bystanders the same as instigators of violence and to disperse everyone for public safety. The purpose is not to allow police to favor one side of a conflict, and to disperse mere bystanders and peaceful demonstrators on the side police disagree with. If police have the ability to distinguish instigators and lawbreakers from bystanders and peaceful demonstrators, they are to arrest the former for the protection of the latter and the general public. Dispersing bystanders and peaceful demonstrators on only one side of a dispute violates the First, Fourth, and Fourteenth Amendments to the United States Constitution." *Id.* ¶ 12.

Doc. No. 3-1 at 15–16. Defendants argue that these allegations are not "relevant, necessary or pertinent" to this action. *Id.* at 16. Additionally, Defendants contend that the allegations regarding SDPD being infested with racists and secessionists, withholding body cameras, and learning it can get away with criminal behavior are irrelevant, immaterial, superfluous, and scandalous. *See id.* at 16–17; *see also* Doc. No. 5 at 5. Plaintiffs briefly respond that these allegations are material to their claims regardless of whether Defendants wish Plaintiffs did not include them. *See* Doc. No. 4 at 9.

As to Allegation 1, the allegation is clearly inflammatory—and arguably conclusory and irrelevant. However, the Court finds that it is conceivably relevant to Plaintiffs' First Amendment claim that Defendants targeted Plaintiffs and other anti-Trump demonstrators because of their viewpoints. *See* Compl. ¶¶ 2, 3, 21, 29. Although the Court may have opted for a different word choice if it were in Plaintiffs' shoes in presenting the differing at-issue viewpoints, it is generally not the Court's role to edit Plaintiffs' complaint to craft seemly allegations. Because the allegation may have some relevance to the issue of viewpoint discrimination, the Court finds that Defendants have not met their burden to strike this allegation. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed.) ("It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action."). Accordingly, the Court **DENIES** Defendants' motion to strike Allegation 1.

As to Allegation 2, the allegation is relevant, material, and pertinent to Plaintiffs' *Monell* claim. The allegation pertains to a separate event from several years ago. However, the allegation relates to whether there was a policy—through longstanding practice or custom—to sustain Plaintiffs' present *Monell* claim. Accordingly, the Court **DENIES** Defendants' motion to strike Allegation 2.

As to Allegation 3, the allegation is immaterial and impertinent to this action. The events of the May 2016 rally and demonstration are relevant to how SDPD responded for the purposes of establishing a policy under *Monell*. However, Plaintiffs' disagreement over bodycam footage is not relevant and appears to be an attempt to relitigate a previous discovery dispute and denial for leave to amend. The bodycam footage from 2016 does not appear to pertain to Plaintiffs or the at-issue events of January 9, 2021. Accordingly, to the extent Plaintiffs allege improperly withheld bodycam videos from May 2016 that do not relate to Plaintiffs' claims arising from January 2021, the Court **GRANTS** Defendants' motion to strike Allegation 3.

As to Allegation 4, the allegation is immaterial and impertinent to this action. Plaintiffs ascribe criminal motive to the city. However, this is a civil case, and "criminal behavior" is not at-issue in this action. Regardless of how Plaintiffs perceive the City's behavior, conclusory and subjective opinions of the City's criminal behavior and motive are immaterial and unnecessary in this civil action alleging violations of the First, Fourth, and Fourteenth Amendment under § 1983. Accordingly, to the extent Plaintiffs ascribe criminal motive to the City, the Court **GRANTS** Defendants' motion to strike Allegation 4.

As to Allegation 5, the allegation is relevant to the context of the unlawful assembly declaration in January 2021 and whether it was a means to effectuate viewpoint discrimination. The allegation relates and pertains to Plaintiffs' theory that the declaration of an unlawful assembly under the Penal Code was a pretext to violate Plaintiffs' First Amendment rights. Accordingly, the Court **DENIES** Defendants' motion to strike Allegation 5.

**C. Conclusion**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion to strike.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss and **GRANTS in part and DENIES in part** Defendants' motion to strike. Plaintiffs must file an amended complaint curing the deficiencies noted herein on or before **June 7, 2021**.

**IT IS SO ORDERED**.

Dated: May 21, 2021

HON. MICHAEL M. ANELLO
United States District Judge