1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

11   MANDY LIEN *et al.*,                    Case No.:  21-CV-224-MMA(WVG)

12                        Plaintiffs,        **ORDER FOLLOWING DISCOVERY**
13   v.                                      **CONFERENCE**

14   CITY OF SAN DIEGO,

15                        Defendant.

16
17
18

19        The Court held a discovery conference on October 4, 2021 and ordered briefing on

20   a pending discovery dispute.[1] In responding to one of Plaintiffs' requests for production of

21   documents, the City produced a twelve-page group of documents that contained emails

22   between law enforcement personnel, an outside agency's "Special Bulletin" regarding a

23   named suspect who threw a burning munition grenade at anti-Trump protestors at a January

24   9, 2021 rally/protest in Pacific Beach, a news release, photographs and video screenshots,

25   and identifying information and photographs of two suspected "antifa" members who are

26

27   _____

28   [1] The briefing is attached hereto as Appendix A.

subjects of ongoing criminal investigations. The City redacted portions of four of the twelve pages it produced, and Plaintiffs now seek unredacted copies of the documents. [2]

The City made its redactions in two groups. The first group involves redactions of the name of a suspect who threw a burning munition cannister at anti-Trump protestors. He was the subject of a criminal investigation, and detectives have since forwarded a prosecution package to the District Attorney for consideration of criminal charges. As of this time, the District Attorney has not made a charging decision either way. These redactions appear on pages COSD 000219 and COSD000220, and the only information redacted is the suspect's name.

The second group of redactions appear primarily on page COSD000229 with two small redactions on page COSD000230. The City redacted the full names, dates of birth, photographs, and prior arrest history of two suspected antifa members who were present at the January 9 event. The document is dated January 12, 2021—three days after the event—and reflects an ongoing effort "to identify subjects involved in criminal behavior" at the event.

Defendant made the redactions in both groups based on the official information privilege, the law enforcement privilege, and third-party privacy rights. As an initial matter, the Court declines to find the City waived the law enforcement privilege objection by not raising it in its response to Plaintiffs' RFP. While Defendant did not initially expressly

---

[2] At this time, the Court declines to rule on Plaintiffs' contention that they are entitled to the video referenced on page COSD000219 given that Plaintiffs did not raise this issue at *any* point before briefly mentioning it for the first time in their discovery brief. It is thus unclear whether, as the Court's Civil Chambers Rules require, the parties have met and conferred on this issue at all. Moreover, given that Plaintiffs mentioned this issue for the first time in their brief, which they submitted after the City submitted its brief, the City has had no opportunity to address this at any point in these proceedings. Finally, it is unclear whether this possible dispute has been brought to the Court's attention within the required 30-day period and pursuant to the procedures set forth in the Court's Civil Chambers Rules. In short, this possible dispute is not ripe for adjudication at this time.

assert the "law enforcement privilege" in its response to the RFP at issue, Defendant did invoke the "official information privilege," which is another term that has been used for the law enforcement privilege. *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 617 (N.D. Cal. 2020) ("[The government investigatory] privilege has been variously referred to as the 'investigatory privilege,' *the 'law enforcement privilege,'* the "federal investigatory privilege," *and the "official information privilege."*") (citing *NLRB v. Silver Spur Casino*, 623 F.2d 571, 580 (9th Cir. 1980)) (emphasis added).

In any event, even if the law enforcement and official information privileges are distinct, the failure to initially object to written discovery requests is not always fatal, and the Court—pursuant to its authority to regulate discovery—has discretion to consider the merits of the objection and the dispute. *See Tillman v. Larpenter*, No. 15-4588, 2018 U.S. Dist. LEXIS 19718, at *5 (E.D. La. Feb. 7, 2018) ("Even if plaintiffs had failed to object [at all], . . . the court retains discretion to decline to compel production . . . when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made.") (cleaned up; citation omitted) (collecting cases). Were the Court to exalt form over substance here, such unyielding rigidity could have dire downstream consequences given the potential impact on a pending criminal referral and ongoing criminal investigations by the Joint Terrorism Task Force. Given these circumstances, the Court does not find the City waived its law enforcement privilege objection.[3]

---

[3] Plaintiffs' contention that they "would be prejudiced if the Court were to rely on this privilege without further briefing" is meritless. Although the City did not raise this objection in its initial discovery response, Plaintiffs were fully aware the City would rely on it after that point. The City's counsel raised this privilege during the initial telephone call with chambers staff and again raised it during the discovery conference before the Court. The City again raised the privilege in its briefing here, and Plaintiffs were aware of that fact, as it appears they reviewed the City's brief before submitting their own brief, in which they could have fully addressed this issue. [Plaintiffs' brief at 5 ("Even under the authorities cited by the City in its brief . . .").] Plaintiff have not and will not be prejudiced, and additional briefing is not warranted given Plaintiffs were fully aware of the City's reliance on this privilege and their ability to include any counter in their later filed brief.

The law enforcement investigatory privilege[4] "serves to prevent disclosure of law enforcement techniques and procedures, preserve the confidentiality of sources, protect witnesses and law enforcement personnel, *safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference with the investigation.*" *Moore v. Garnand*, No. CV19-0290-TUC-RM(LAB), 2020 U.S. Dist. LEXIS 120496, at *6-7 (D. Ariz. July 9, 2020) (internal quotation and citation omitted) (emphasis added); *see also In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988); *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998), aff'd, 203 F.3d 53, 340 U.S. App. D.C. 183 (D.C. Cir. 1999) ("The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement."). "In order to assert the privilege, the following requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information, (2) assertion of the privilege must be based on actual personal consideration by that official, and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *Roman v. Wolf*, No. EDCV20-0768-TJH(PVC), 2020 U.S. Dist. LEXIS 213025, at *5 (C.D. Cal. July 16, 2020) (citing *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000)).

Here, Defendant has met its burden. The City submitted a signed declaration from SDPD Captain Novak, who avers that he personally reviewed the redacted documents and explains the need for the privilege and redactions: an ongoing, pending criminal prosecution against the male shown holding what appears to be an incendiary grenade and ongoing active criminal investigations by the Joint Terrorism Task Force against the other

---

[4] Although the Ninth Circuit has not expressly recognized the law enforcement privilege, *Shah v. DOJ*, 714 F. App'x 657, 660 n.1 (9th Cir. 2017), district courts within the Circuit have applied it, *Roman v. Wolf*, No. EDCV20-0768-TJH(PVC), 2020 U.S. Dist. LEXIS 213025, at *5 (C.D. Cal. July 16, 2020).

two individuals. Safeguarding this information under these circumstances is precisely the purpose of the law enforcement investigation privilege.[5]

Plaintiffs claim they "are entitled to discovery into the identity of these [two] "subjects," [on page COSD000229] which could reveal that they were agitators attempting to create a pretense for action being taken against the anti-Trump side . . . ." (Plaintiffs' brief at 2.) Interestingly, in the aftermath of the grotesque events of January 6, 2021, this same strained argument was used by some Trump supporters who claimed antifa had infiltrated their ranks, and it was the infiltrators—not Trump supporters—who breached the U.S. Capitol and murdered a police officer—the same event that Plaintiffs and fellow counter-Trump protestors were countering on January 9. Now on the other side, Plaintiffs—without any reasonable basis—engage in the same baseless and strained speculation. Moreover, Plaintiffs do not explain how this would be relevant to their case even if by some chance it was true. How are the police to distinguish "real" antifa throwing objects from supposed "agitators" dressed as protestors or in all black antifa garb[6] throwing

---

[5] The Court would also deny the request based on the three individuals' rights to privacy, given that the redactions include dates of birth and past arrest histories of third parties and outweigh Plaintiffs' need for the information that they can, as explained below, readily procure from numerous other sources. *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006).

[6] According to the Center for Strategic and International Studies (CSIS)—a bipartisan, non-profit policy research organization founded in 1962—antifa supporters "sometimes organize in black blocs—ad hoc gatherings of individuals who wear black clothing, ski masks, scarves, sunglasses, and other material to conceal their faces . . . ." Catrina Doxsee & Seth G. Jones, *Examining Extremism: Antifa*, Center for Strategic & International Studies (June 24, 2021), *available at* https://www.csis.org/blogs/examining-extremism/examining-extremism-antifa (last visited Oct. 15, 2021). "Antifa has also adopted anti-fascist symbols on their clothing, flags, and other paraphernalia, such as the two flags of the Antifaschistische Aktion and the three arrows of the Iron Front." *Id.* In reviewing photographs and videos from the January 9 event, all of this was evident. It appears a large number of the anti-Trump protestors were dressed as the CSIS describes and multiple individuals in the group carried large antifa stylized black and red flags that identified themselves as participating in an "antifascist action."

21-CV-224-MMA(WVG)

objects from the crowd of protestors that the police dispersed? Not only is this speculative reason baseless, but it would also have no relevance to this case because the police cannot possibly be charged with making such impossibly difficult distinctions (*i.e.*, "real" protestors versus pro-Trump "agitators" dressed as protestors) between individual members of a crowd in real time in the midst of the chaos of civil unrest. Any argument that police should not have dispersed the anti-Trump crowd because some of them secretly were "agitators" completely lacks credibility.

The Court also finds Plaintiffs would not be prejudiced by the City's redactions, as *hundreds* of people were present at the January 9 event. These amount to hundreds of other possible witnesses and alternate sources of information. Moreover, every aspect of the event, the time period before the event began, and its aftermath were heavily documented on video from every angle by a police helicopter, at least one media helicopter, numerous police body cameras, media cameras on the ground, and numerous participants themselves recorded using both video cameras and cell phones. The notion that Plaintiffs would somehow be prejudiced if they do not learn the identity of these three specific individuals is ludicrous given the hundreds of other individuals who were present that day and the many hours of video recorded by all sources. Accordingly, any evidence these three individuals may have is readily obtainable from a multitude of other sources without compromising active criminal investigations or pending prosecutions.

Finally, even if Plaintiffs learned the identity of the male on page COSD000220, it strains credulity that he would do anything other than invoke his Fifth Amendment rights at deposition when asked about his throwing an incendiary device at counter protesters or anything else he did that that could subject him to criminal liability. The result would be compromising a criminal investigation and prosecution without any value to this case, and such a result is untenable.

/ / /

/ / /

/ / /

Based on the foregoing, the Court DENIES Plaintiffs' request to compel production of the unredacted versions of documents at issue.

**IT IS SO ORDERED.**

DATED: October 18, 2021

Hon. William V. Gallo
United States Magistrate Judge

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# Appendix A

28



October 8, 2021

Hon. William V. Gallo
United States District Court
221 W. Broadway
San Diego, CA 92101

*Sent via e-mail only to* efile_gallo@casd.uscourts.gov

**RE:** *Lien v. City of San Diego*, Case No. 3:21-cv-00224-MMA-WVG

Dear Judge Gallo:

This letter brief sets forth Plaintiffs' position in the above-captioned case for why the City should be required to produce unredacted documents COSD000219, 220, 229, and 230. Additionally, the first redaction is the name of a video attached to an email, and the City should also be required to produce the video.

COSD000219 is an email explaining that SDSO (San Diego Sheriff's Office) "is attempting to locate SDPD Officers at the intersection of Mission Boulevard and Hornblend Street in the Pacific Beach area on 01-09-21 at about 1423 hours who witnessed the deployment of an unknown burning munition by a protestor." This is the time and location of the incident this lawsuit arises from. The video name is redacted, which according to the City Attorney's office is the name of the suspect. Both the name and the video are relevant and discoverable.

As explained on the next page, COSD000220, the individual who threw the "military type smoke, CS, or CN grenade" was on the "Pro-Trump" side, and threw the item into the anti-Trump side. Yet, SDPD only declared the anti-Trump side to be an "unlawful assembly," while allowing the pro-Trump side to remain. The name of this individual is repeatedly redacted on page COSD000220. Plaintiffs are entitled to discovery into the identity and actions of this individual.

COSD000229 appears to relate to a different topic, which is labeled "Targeted violence by 'Antifa' members." Under the heading "SUBJECTS" appears the line, "The following subjects were possibly identified based on prior

Hon. William V. Gallo
October 8, 2021, 2021
Page 2 of 5

investigations, booking photos and social media posts." The remainder of this topic is then blacked out, which takes up half of the page. Plaintiffs are entitled to discovery into the identity of these "subjects," which could reveal that they were agitators attempting to create a pretense for action being taken against the anti-Trump side, or other information relevant to Plaintiffs' claims.

COSD000230 has two names redacted and states that these individuals "were not confirmed to be directly involved in the assaults based on currently available video, and were only identified as participants who were at the protest and/or were close to where the assaults were occurring." Accordingly, these individuals are witnesses.

The discovery at issue was produced in response to Plaintiffs' RFP No. 4, which sought, "All COMMUNICATION between SDPD Chief Nisleit and any other person regarding the 'Civil unrest incident in Pacific Beach on January 9, 2021.'" The City responded:

> Objection. This request is overly broad and unlimited in scope and not reasonably calculated to lead to the discovery of admissible evidence. The request seeks documents that are not relevant to plaintiffs' claims nor proportional to the needs of the case. In addition, the request is objectionable because it seeks privileged documents pertaining to the official information or executive privilege or deliberative process or are protected from disclosure by the attorney client privilege or attorney work product doctrine. This request also invades the personal and fundamental right of privacy of individuals not parties or witnesses to the present lawsuit in contravention of the federal right to privacy, the United States Constitution, and Section 1 of Article I of the California Constitution. To the extent the request seeks public records, those documents are equally available to plaintiff and the request is therefore burdensome, oppressive and harassing to Defendant. Subject to and without waiving these objections, City responds as follows: See, COSD000211-COSD000230.

This information may not be available from other sources, as it apparently involves assaultive acts connected to the pro- and anti-Trump demonstrations that Plaintiffs and their witnesses did not see. The City has invoked the "official information privilege," but has not met the requirements of this privilege, which are as follows:

Hon. William V. Gallo
October 8, 2021, 2021
Page 3 of 5

The official information privilege is subject to the competing interests of the requesting party, and is "subject to disclosure especially where protective measures are taken." *Kerr*, 511 F.2d at 198. Courts embrace "*a balancing approach that is moderately pre-weighted in favor of disclosure*." *Kelly v. San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987) (emphasis in original) (ordering disclosure of law enforcement documents subject to a protective order to a plaintiff in a § 1983 action).

The party asserting the official information privilege must invoke it by name and make a substantial threshold showing of privilege. *Id.* at 669. To make such a showing, a "party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter." *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (citing *Kerr*, 511 F.2d at 198). The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality,

> (2) a statement that the official has personally reviewed the material in question,

> (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer,

> (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests,

> (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly*, 114 F.R.D. at 670.

A "general assertion" that a law enforcement organization's internal investigatory system ""would be harmed by disclosure of the documents is

Hon. William V. Gallo
October 8, 2021, 2021
Page 4 of 5

insufficient' to meet the threshold test for invoking the official information privilege." *Soto*, 162 F.R.D. at 614 (quoting Chism v. County of San Bernardino, 159 F.R.D. 531, 534-535 (C.D. Cal. 1994)). A "general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure." *Soto*, 162 F.R.D. at 614 (citing *Miller*, 141 F.R.D. at 300-301; *Kelly*, 114 F.R.D. at 672). The party resisting discovery "must specifically describe how disclosure of the requested documents in that particular case ... would be harmful." *Soto*, 162 F.R.D. at 614 (emphasis in original) (citing *Miller*, 141 F.R.D. at 300-301).

(*Nehad v. Browder*, 2016 U.S. Dist. LEXIS 62594, *10-11.)

Here, the City has simply made a "general assertion" of harm. The City did not provide the required affidavit with its responses, but has only now produced a declaration from Captain Matt Novak with its informal brief. The declaration falls short and does not address requirements 3-5 identified in *Nehad, supra.* The City also relies on the deliberative process privilege, but this privilege fails as well.

The Court also notes that the Defendants asserted the deliberative process privilege for any investigations that are still ongoing, including the internal affairs investigation of the shooting of the Decedent. (Dkt. No. 82-1 at ¶ 2.) Courts have held that the deliberative process privilege, however, is "inappropriate for use in civil rights cases against police departments." *Soto*, 162 F.R.D. at 612; see also e.g., *Pittman v. County of San Diego*, 2010 U.S. Dist. LEXIS 97569 (S.D. Cal. Sept. 17, 2010). The deliberative process privilege should "be invoked only in the context of communications designed to directly contribute to the formulation of important public policy," and thus "would offer no protection at all to most of the kinds of information police departments routinely generate." *Id*. Courts thus reject use of the deliberative process privilege as applied to internal affairs investigations, as well as records of witness or police officer statements because they are of the type that are routinely generated. *Id*.

(*Nehad v. Browder*, 2016 U.S. Dist. LEXIS 62594, *20-21.)

While the City for the first time in its brief cites the "law enforcement investigation privilege," this was not one of the privileges cited in its objections,

Hon. William V. Gallo
October 8, 2021, 2021
Page 5 of 5

and the City is raising it here for the first time. Plaintiffs would be prejudiced if the Court were to rely on this privilege without further briefing. Even under the authorities cited by the City in its brief, the City has failed to meet the requirements to invoke this privilege or to explain why the protective order that is already in place would not be sufficient to protect the City's interests.

Generally, discovery may be obtained "regarding any matter, not privileged, that is relevant to the claim or defense of any party…." (*Bryant v. Ochoa* (S.D. Cal. May 14, 2009, No. 07cv200 JM (PCL)) 2009 U.S.Dist.LEXIS 42339, at *2 (quoting in part, FRCP 26(b)(1).) Once the party seeking discovery establishes that the request meets the relevancy requirement, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." (*Nehad v. Browder* (S.D.Cal. May 10, 2016, No. 15-CV-1386 WQH NLS) 2016 U.S.Dist.LEXIS 62594, at *3 citing *Bryant v. Ochoa* (S.D. Cal. May 14, 2009) 2009 U.S. Dist. LEXIS 42339 at *1, *Blankenship v. Hearst Corp.*(9th Cir. 1975)) 519 F.2d 418, 429 and others.)

The party opposing discovery carries a heavy burden of showing why discovery should be denied. (*WebSideStory, Inc. v. NetRatings, Inc.* (S.D.Cal. Mar. 22, 2007, No. 06cv408 WQH(AJB)) 2007 U.S.Dist.LEXIS 20481, at *5-6.)

"'The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.' *Oakes v. Halvorsen Marine Ltd*., 179 F.R.D. 281, 283 (C.D. Cal. 1998); *Nestle Foods Corp. v. Aetna Casualty & Surety Co*., 135 F.R.D. 101, 104 (D. N.J. 1990)." (*Martinez v. City of Fresno*, 2006 U.S. Dist. LEXIS 94101, *11-12, 2006 WL 3762050.)

The City has failed to meet its burden of showing why discovery of the unredacted documents and video file should not be allowed. Accordingly, the City should be required to produce documents COSD000219, 220, 229, and 230 in unredacted form, as well as the video that accompanied COSD000219.

Cc: Deputy City Attorney Cathy Richardson
<CRichardson@sandiego.gov>
,

Respectfully submitted,

Bryan Pease, Esq.
Attorney for Plaintiffs

---

1  MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER, Assistant City Attorney
2  CATHERINE A. RICHARDSON, Senior Chief Deputy City Attorney
California State Bar No. 137757
3       Office of the City Attorney
1200 Third Avenue, Suite 1100
4       San Diego, California 92101-4100
Telephone:  (619) 533-5800
5       Facsimile:  (619) 533-5856

6  Attorneys for Defendant
City of San Diego
7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10
MANDY LIEN, an individual; and ERIN )   Case No.  21cv224 MMA (WVG)
11 SMITH, an individual,               )
                                       )   **DEFENDANT CITY OF SAN**
12            Plaintiffs,              )   **DIEGO'S BRIEFING RE:**
                                       )   **DISCOVERY ISSUE**
13       v.                            )
                                       )
14 CITY OF SAN DIEGO, a charter city;  )   Magistrate: Hon. William V. Gallo
DAVID NISLEIT, an individual; TODD    )
15 GLORIA, an individual; and DOES 1-10, )
                                       )
16            Defendants.             )
                                       )
17 _____ )

18 **I.    Facts**

19        Plaintiffs Mandy Lien and Erin Smith filed this lawsuit as a result of their

20 attendance at a demonstration that took place in Pacific Beach on January 9, 2021.

21 Due to escalating violence, an unlawful assembly was declared. Plaintiffs allege

22 that the unlawful assembly was declared and enforced only against the anti-Trump

23 protesters while the pro-Trump side was permitted to continue its demonstration.

24 While dispersing, Smith tripped and was allegedly hit by SDPD officers with

25 batons while on the ground and then hit with a pepper ball after she got up and tried

26 to leave. Lien claims she was hit by a female officer when she tried to help Smith

27 up from the ground.

28 ///

Document Number: 2780753                     1

## II.     Plaintiffs' Claims

Plaintiffs allege that the City: (1) violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights by declaring an "unlawful assembly" and then dispersing only the anti-Trump side, and by "impacting Plaintiffs with chemical weapons and batons and forcing them to leave a public forum where they were peacefully demonstrating;" (2) enforced the unlawful assembly declaration in a discriminatory fashion; and (3) is vicariously liable for the actions of SDPD officers who allegedly used force and threat of force to stop Plaintiffs from exercising their free speech rights, were negligent, and assaulted and battered Plaintiffs.

## III.    The Discovery Dispute

Plaintiffs' Request for Production of Documents (Set One) asked for all communications between SDPD Chief Nisleit and any other person regarding the "Civil unrest incident in Pacific Beach on January 9, 2021." The City produced a number of documents, including an email from the SDPD Watch Commander to SDPD sworn officers forwarding a "Be on the Lookout [BOL]" and request for witness information on a suspect in the January 9, 2021 civil unrest. (See documents bates-stamped COSD 000219-220, previously lodged with the Court.) The only information redacted from these two pages is the suspect's name. The City also produced a report dated January 12, 2021 regarding possible suspects involved in targeted Antifa violence at the January 9th incident. (See documents bates-stamped COSD000229-230.) The redactions include the suspects' identifying information  and information regarding prior arrests.

## IV.    The Redacted Information is Privileged and Not Subject to Disclosure

Plaintiffs and Defendant in this case are both entitled to "obtain discovery regarding any ***nonprivileged matter*** that is relevant to any party's claim or defense and proportional to the needs of the case." Thus, while the parties and the Court must generally consider proportionality when resolving discovery disputes, discovery of privileged matters goes beyond the legitimate scope of information to

1  be obtained during discovery even if the information is relevant to a party's claims

2  or defenses. Fed. R. Civ. P. 26(b)(1).

3  Here, as confirmed in the attached declaration of SDPD Captain Matt Novak,

4  the redacted information is privileged. The redactions on the documents bates-

5  stamped COSD000219-220 identify a suspect in an ongoing criminal investigation

6  that was sent to the District Attorney's office for prosecution. This is a continuing

7  case that needs to be kept confidential at least until the case is issued by the District

8  Attorney's Office. Similarly, the redactions on the documents bates-stamped

9  COSD000229-230 identify targets of a case being investigated by the Joint

10  Terrorism Task Force.

11  The City contends the redactions are appropriate on several grounds:

12  1.  <u>Law Enforcement Investigatory Privilege:</u>  The law enforcement

13  investigation privilege protects documents the disclosure of which may harm law

14  enforcement efforts. The burden of establishing the privilege rests with the party

15  claiming it. *Bradley v. Cty. of San Joaquin*, No. 2:17-CV-02313 KJM AC, 2018

16  WL 4502481, at *5 (E.D. Cal. Sept. 20, 2018). To establish the law enforcement

17  investigatory privilege, a defendant must show: (1) a formal claim of privilege

18  made by a head of the department that controls the requested information; (2) the

19  privilege is asserted based on personal consideration by that official; and (3) the

20  official provides an explanation of why the specified information falls within the

21  privilege. *U.S. ex rel Burroughs v. DeNardi Corp*., 167 F.R.D. 680, 687 (S.D. Cal.

22  1996). The privilege is qualified and may be overcome by a strong showing of

23  relevance and an inability to obtain the information from other sources. *Sanchez v.*

24  *City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990).

25  Here, the redacted information has no relevance. It identifies three possible

26  suspects in criminal prosecutions. The suspects are not parties. Plaintiffs' counsel

27  claims they may be witnesses yet fails to say what they were witnesses to.

28  Moreover, there were hundreds of people at the subject incident. Plaintiffs' lawsuit

1   claims that law enforcement discriminated against anti-Trump protesters. There is

2   no reason Plaintiffs cannot obtain information relevant to their claims from other

3   sources, including body worn camera video footage, media coverage, and

4   depositions of witnesses or law enforcement personnel who were present on the day

5   of the incident.

6          2.   Official information privilege: The redacted information is also subject to

7   the qualified privilege for "official information." To determine if this privilege

8   applies, the court must weigh the potential benefits of disclosure against the

9   potential disadvantages. If the potential disadvantages are greater, the privilege bars

10  discovery. *Sanchez v. City of Santa Ana*, 936 F.2d at pp. 1033–34. A party asserting

11  this privilege must provide an affidavit or declaration under penalty of perjury from

12  the head of the department that has control over the matter, stating that (1) the

13  agency generated or collected information and has maintained its confidentiality;

14  (2) the official has personally reviewed the information in question; and (3) specify

15  the governmental or privacy interests that would be threatened by disclosure of the

16  information to plaintiff or her lawyer. See *Miller v. Pancucci*, 141 FRD 292, 301

17  (C.D. Cal. 1992).

18         Here, the City provides the declaration of SDPD Captain Matt Novak. The

19  declaration explains that the information has been kept confidential, Captain Novak

20  has personally reviewed the information and redactions and explains the harm that

21  may result if the redacted information is disclosed. Conversely, there is no benefit

22  to disclosure of the information. It is very unlikely that the suspects will cooperate

23  with Plaintiffs' counsel and risk incriminating themselves if he tries to contact them

24  as he indicated he intends to do. And again, there is no indication that these

25  suspects have any information that can assist Plaintiffs' case or that Plaintiffs

26  cannot obtain from other sources. The potential disadvantages of disclosure

27  outweigh any potential benefits.

28  / / /

3.  <u>Right to Privacy</u>: A constitutionally based right of privacy is recognized by the courts and can be asserted in response to discovery requests. *Noble v. City of Fresno*, No. 1:16-CV-01690 DAD BAM, 2017 WL 5665850, at *5 (E.D. Cal. Nov. 27, 2017). In resolving privacy objections, courts balance the need for the requested information against the asserted privacy right. *Petillo v. Peterson*, No. 1:16-CV-0488 AWI JLT (PC), 2018 WL 5617216, at *5 (E.D. Cal. Oct. 26, 2018).

Here, the suspects are still just that—suspects. They have a right to privacy as to their personal identifying information as well as information regarding prior arrests. Plaintiffs fail to provide any basis for their purported need for this information.

**V.    Conclusion**

The redactions are appropriate and disclosure of the redacted information should be denied.

Dated:  October 8, 2021                    MARA W. ELLIOTT, City Attorney


                                           By  *s/Catherine A. Richardson*
                                               Catherine A. Richardson
                                               Senior Chief Deputy City Attorney

                                           Attorneys for Defendant
                                           City of San Diego

MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER, Assistant City Attorney
CATHERINE A. RICHARDSON, Senior Chief Deputy City Attorney
California State Bar No. 137757
      Office of the City Attorney
      1200 Third Avenue, Suite 1100
      San Diego, California 92101-4100
      Telephone:  (619) 533-5800
      Facsimile:  (619) 533-5856

Attorneys for Defendant
City of San Diego

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANDY LIEN, an individual; and ERIN SMITH, an individual, <br><br>        Plaintiffs, <br><br>    v. <br><br>CITY OF SAN DIEGO, a charter city; DAVID NISLEIT, an individual; TODD GLORIA, an individual; and DOES 1-10, <br><br>        Defendants. | Case No.  21cv224 MMA (WVG) <br><br>**DECLARATION OF CAPTAIN MATT NOVAK** |

I, MATT NOVAK, declare as follows:

    1.    I am employed by the San Diego Police Department and am currently assigned as a Captain to Investigations 1 Unit. My duties include the supervision and oversight of the operations of that unit. Except where stated on information and belief, I have personal knowledge of the facts set forth in this declaration and could and would testify competently to those facts if called as a witness.

    2.    I have personally reviewed the redactions in the documents bates-stamped COSD 219-220 and 229-230. These redactions are critical and need to remain. The criminal case against the suspect identified in COSD 219-220 is on-going and has been sent to the District Attorney's office for prosecution. The

redacted information was generated or collected by SDPD which has maintained its confidentiality. In fact, there is a continuing case that needs to be kept confidential at least until the case has been issued by the District Attorney's Office. Additionally, the two suspects identified in COSD 229-230 are targets of the Joint Terrorism Task Force and the investigation could be compromised if their identifying information is released.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

Executed this 7th day of October, 2021, at San Diego, California.

_____
MATT NOVAK, Declarant